RICK D. ROSKELLEY, ESQ., Bar # 3192
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
Telephone:	702.862.8800
Fax No.:	702.862.8811
CORY G. WALKER, ESQ., AZ Bar # 027853
2425 E. Camelback Rd., Suite 900
Phoenix, AZ 85016
Telephone:	602.474.3600
Fax No.	602.957.1801

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KARL E. RISINGER, an individual on behalf of himself and all others similarly situated,<br><br>                       Plaintiff,<br><br>vs.<br><br>SOC LLC, et al.,<br><br>                       Defendants. | Case No. 02:12-cv-00063-MMD-PAL<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEFING PURSUANT TO COURT'S ORDER OF MARCH 29, 2013 (DKT. #59)** |

**I.     INTRODUCTION**

Pursuant to the Court's March 29, 2013 Order, Defendants SOC LLC, SOC-SMG Inc., and Day & Zimmermann, Inc. (collectively "Defendants") address Plaintiff Karl E. Risinger's Iraqi causes of action under the Iraq Labor Code ("Labor Code").[1]  Given the Court's March 29, 2013 Order, this brief does not again raise Defendants' arguments that the November 17, 2008 Agreement

---

[1] In support of this brief, we have retained Professor Haider Ala Hamoudi, an expert in Iraqi law and an Associate Professor at the University of Pittsburgh School of Law.  A declaration from Professor Hamoudi, as well as his qualifications and resume, is included in the Appendix to this brief.  This Court may consider Professor Hamoudi's expert testimony to support its determination of Iraqi law.  FED. R. CIV. PRO. 44.1.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

between the United States of America and the Republic of Iraq (the "SOFA") should be held to entirely preempt application of the Iraq Labor Code.

## II. ARGUMENT

Almost one year after completing his security guard services for Defendant SOC LLC and returning home to the United States, Plaintiff filed his First Amended Complaint and is asking this Court to grant him, and his putative class members, compensation in excess of the plain terms of his employment contract. To achieve this, Plaintiff seeks to maintain a class action suit that conflicts with and improperly enlarges and modifies the substantive rights provided under the Iraq Labor Code. Plaintiff also seeks to enforce rights provided under the Labor Code despite his failure to register for employment in Iraq or otherwise satisfy his own legal obligations under Iraqi law. Plaintiff cannot use Iraqi law to adjust his employment contract's terms while ignoring Iraqi law in other relevant respects.

Additionally, Plaintiff's claims in the First Amended Complaint ignore the fact that, as a security guard operating in Iraq under the Labor Code, Mr. Risinger was exempt from certain of the working hours restrictions. More important is the fact that Mr. Risinger's $65,000 annual salary fully, completely, and fairly compensates him under the Iraq Labor Code and he has no basis to ask this Court to grant him more. These subjects are explored in turn below.

### A. Mr. Risinger Cannot Pursue Class Action Claims Under Either Rule 23 or Any Iraq Law

Mr. Risinger's attempted pursuit of his Labor Code claims by means of a class action suit should be rejected because the proposed use of Federal Rule of Civil Procedure ("Rule") 23 to maintain the action conflicts with and enlarges Iraqi substantive law regarding group actions. Once Rule 23 is properly found inapplicable, no claims arising under Iraqi law can be pursued on behalf of any plaintiff not a party to this action.

2.

1. **The Labor Code Mandates Jurisdictional Prerequisites to Any Group Action**

No group or collective labor dispute can proceed directly to an Iraqi Labor Court. Instead, the Labor Code mandates that any group action first must be raised with the Minister of Labor and Social Affairs. *See* Hamoudi Decl., App. A, Labor Code arts. 131-133.[2] Labor Code Article 131 provides:

> When collective differences at work mature into disputes in accordance with Article 130 of this law, the relevant employer or employers are obligated, or the relevant labor union bodies are obligated, each from their own side, to immediately caution the Minister of Labor and Social Affairs and the Head of the General Confederation of Labor Unions simultaneously of the dispute which has broken out, and provide a succinct and complete memorandum as to its causes and its evolution, and the incumbent procedures to address it and solve it.

*Id.* at art. 131.

If the Minister of Labor and Social Affairs and the Head of the Confederation of Trade Unions are unable to find a resolution, they will issue a joint writing referring the dispute to the Minister of Justice. The Minister of Justice will be asked to call the labor disputes panel of the Court of Cassation into session within 48 hours, so that it may examine the dispute. *See Id.* at art. 132(5). As Professor Hamoudi explained in his original declaration:

> The Iraq Civil Procedure Code, which is incorporated into the Labor Code for particular purposes, as set forth in Labor Code 146, does not recognize class actions as a general matter.

Hamoudi Decl. ¶ 23, ECF No. 37, filed April 24, 2012.

---

[2] Professor Hamoudi reviewed the English translation of the Iraq Labor Code that Plaintiff's counsel proffered as Tab A in the Appendix in Support of Plaintiff Karl Risinger's Memorandum of Points And Authorities In Opposition To Defendant's Motion To Dismiss Plaintiff's First Amended Complaint. *See* ECF No. 44, filed May 11, 2012. As detailed in his declaration, Professor Hamoudi has raised reliability concerns regarding the accuracy of the proffered translation. Plaintiff's proffered translation lacks any foundation and has not been authenticated as a reliable or accurate translation of the original Arabic text. Fed. R. Evid. 901. In light of these concerns, the Court should reject Plaintiff's translation and should instead interpret the Labor Code based on the translations Professor Hamoudi has provided of the relevant Labor Code articles in an Appendix to his declaration.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

3.

The plain language of the foregoing provisions, as well as the other provisions translated in Professor Hamoudi's declaration, establish substantive jurisdictional prerequisites that Mr. Risinger was required to exhaust prior to turning to any court, whether in Iraq or otherwise. These jurisdictional prerequisites are akin to American requirements of exhaustion of administrative remedies in certain bodies of law, such as Title VII of the U.S. Civil Rights Act of 1964 regulating employment.[3] If a litigant fails to exhaust the mandated administrative remedies, a court has *no* jurisdiction to hear the dispute. *Barnett v. Nevada*, 5 F. App'x 629, 631 (9th Cir. 2001) (Title VII action barred because litigant failed to exhaust administrative remedies).

For the very same reasons, this Court should decline to exercise its diversity jurisdiction to entertain a class action proceeding because Mr. Risinger has failed to demonstrate that he first adhered to the substantive jurisdictional prerequisites mandated under the Labor Code. *Paige v. California,* 102 F.3d 1035, 1041 (9th Cir. 1996) (where, under Title VII, "a plaintiff must exhaust his administrative remedies before filing a federal complaint."). The Court has concluded that Iraqi law may govern certain of Mr. Risinger's claims. In applying Iraqi law, however, the Court should give full force and effect to all of the Labor Code's provisions so as to avoid any arbitrary or unjust application of Iraqi law.

2. Mr. Risinger Cannot Use a Federal Rule of Civil Procedure to Enlarge or Modify the Labor Code

Mr. Risinger cannot maintain a class action by using Rule 23 to perform an end-run on the Iraqi requirement that any collective labor conflict must first proceed to the Minister and the Head of the General Confederation of Labor Unions and, only then, to the Court of Cassation. It has been

---

[3] Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. Like the Labor Code, Title VII sets forth a detailed administrative procedure that a litigant must adhere to if a court is to have jurisdiction later. If a person wants to make a Title VII claim, he must first file a charge with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(b). Only after exhaustion of this process can an individual file a lawsuit in the courts alleging a Title VII violation. *See* 42 U.S.C. § 2000e-5(f)(1) (defining triggering events after which a person may file a Title VII lawsuit).

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

4.

recognized that "[c]lass actions may not be maintained under Rule 23 . . . when Rule 23's procedures are inconsistent with the substantive statute under which the action is brought or when the substantive statute provides an alternative means for obtaining class or group relief." *See* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.04 (Matthew Bender 3d ed.); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975); *Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 780-81 (E.D. Mich. 1971); *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1248-49 (11th Cir. 2003).  Here, the Labor Code not only provides an alternative means for obtaining class or group relief, but as explored above, places demands upon plaintiffs seeking to secure such relief.  The jurisdictional prerequisites that the Labor Code mandates would be frustrated if Rule 23 were applied in this case.  Accordingly, even if the Court permits Mr. Risinger to proceed with his claims under the Labor Code in his individual capacity, which it should not do as explained below, the Court must refuse to permit the class action to proceed.

Relevant to this determination is the Supreme Court's recent decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company,* 559 U.S. 393, 130 S. Ct. 1431 (2010). The *Shady Grove* decision explores the limitations on a plaintiff's ability to maintain a class action claim under Rule 23 in the face of a conflict with state law and the Rules Enabling Act. *Id*.; 28 U.S.C. § 2072.

Under *Shady Grove*, when a particular case is covered by one of the Federal Rules of Civil Procedure, a Court is instructed to apply the Federal Rule unless doing so would violate the Rules Enabling Act or the Constitution. *Shady Grove,* 130 S. Ct. at 1448.  A Federal Rule of Civil Procedure must give way to the substantive law of a particular state, here Iraq, if applying the Federal Rule would "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b); *Shady Grove,* 130 S. Ct. at 1449; *see also Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 984-85 (10th Cir. 2010).  As Justice Stevens explained in *Shady Grove,* "[a] federal rule . . . cannot

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

5.

govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right."[4]  *Shady Grove,* 130 S. Ct. at 1452.

The Tenth Circuit's decision in *Garman* is instructive here.  *Garman*, 630 F.3d 977.  In *Garman*, the Wyoming legislature had imposed special pleading requirements as a further limitation on the waiver of sovereign immunity, limiting subject matter jurisdiction for Wyoming and other courts.  *Id.* at 984.  The plaintiff in *Garman* failed to comply with the pleading requirements under the Wyoming statute, but attempted to rescue the claim by retreat to the more liberal pleading standards provided under the Federal Rule.  The Tenth Circuit held that "[p]ermitting the federal rules to trump substantive Wyoming law would 'abridge, enlarge, or modify' the litigants' rights in violation of the Rules Enabling Act."  *Id.* at 985; *see also Tait*, 2011 WL 1832941 at *8 (holding that permitting a class action in that case would violate a limitation in the Tennessee Consumer Protection Act ("TCPA") because the TCPA was "so intertwined with [the] statute's rights and remedies that it functions to define the scope of the substantive rights.").

Here, Mr. Risinger's attempted use of Rule 23 to avoid the jurisdictional predicate established under the Labor Code should be similarly denied.  As Professor Hamoudi explains in his declaration, it is critical to recognize the important differences between the statutory and common law legal system in the United States and the civil code legal system in Iraq.  Hamoudi Decl. ¶¶ 7-13.  The Labor Code, by definition, is intended to be a singular and all encompassing articulation of all substantive rights relating to labor issues in Iraq.  *Id.* at ¶ 18.  Thus, the absence of any express provision for a private right to pursue a group action prior to exhausting the administrative process

---

[4] In *Shady Grove*, Justice Stevens authored the concurring opinion, deciding the issue on the narrowest grounds and, therefore, subsequent courts in this Circuit have looked to his opinion as controlling.  *See Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *8 (C.D. Cal. 2011) (citing *Bearden v. Honeywell Int'l., Inc.*, 2010 WL 3239285, at *10 (M.D. Tenn. 2010)).

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

that the Labor Code mandates is substantive or, at a minimum, is so intertwined with the Labor Code's rights and remedies that it functions to define the scope of the substantive right of group action in Iraq. *See Sosa v. Alvarez-Machain et al.*, 542 U.S. 692 (2004) (where judicial caution counseled against inferring an intent to provide a private cause of action where a statute (there the Alien Tort Statute) did not expressly supply one).

Unlike the New York statute at issue in *Shady Grove*, the Labor Code operates only to define the rights of workers and employers within Iraq. Justice Stevens found in *Shady Grove* that the New York statute was designed to regulate not only claims based on New York law, but also claims based on federal law or the law of other states. *Shady Grove*, 130 S. Ct. at 1457-60. Thus, the expansive application of the New York statute made it "hard to see how [the rule] could be understood as a rule . . . that serves the function of defining New York's rights or remedies." *Id.* at 1457. That is not the case here. The provisions in the Labor Code regarding group actions are intertwined with the rights and remedies that it creates and, therefore, function to define the scope any substantive rights. And, as in *Garman*, the Labor Code narrowly functions to establish or govern rights in a particular sovereign jurisdiction and, therefore, is even more clearly substantive. *Garman,* 630 F.3d at 985.

Allowing a Rule 23 class action lawsuit in the context of the Labor Code alters more than the "manner and means" by which the litigants' rights are enforced but also affects the substantive rights they have. As Professor Hamoudi explained in his original declaration:

> For an entire class of workers at an enterprise to seek remedies in the Labor Code but not adhere to these provisions to mediate and administer disputes as between them frustrates the deep Iraqi public policy to deal with labor disputes through these mediatory mechanisms, which give the state some level of influence over whatever final solution is reached. In other words, Iraq has chosen to balance and carefully calibrate its generous labor provisions against significant limitations on the means by which broad labor disputes may be raised. The Labor Code cannot effectively function under circumstances where its rights to workers are recognized, but its collective dispute mechanisms are not.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

Hamoudi Decl. ¶¶ 31-32, ECF No. 37, filed April 24, 2012.

For the foregoing reasons, even if the Court were to permit Mr. Risinger to proceed with his claims under the Labor Code in his individual capacity, the Court should dismiss the request for class status under Rule 23.  To secure court jurisdiction for any collective or group action in Iraq, a plaintiff must have exhausted the alternative mechanisms for relief provided under the Labor Code.  Mr. Risinger has failed to plead facts establishing that he satisfied those requirements and, therefore, any claim for class status under Rule 23 should be dismissed.

### B. No Relief Is Available Under Iraqi Law Because Mr. Risinger Did Not Comply with Labor-Permitting Requirements

Mr. Risinger's failure to comply with the labor permit requirements is a substantive predicate for his claim for relief under the Labor Code, and therefore, any claims based on the Labor Code should be denied.  The Court's March 29, 2013 Order determined that the "SOFA precluded the application of any Iraqi permitting requirement on American contractors." ECF No. 59, 25:3-4.  The Court noted, however, that "while the SOFA regulates the legality of an American presence in Iraq, it *does not* concern the specific terms and conditions upon which employers may employ individuals in Iraq.  As such, SOFA leaves open the application of other applicable Iraqi employment regulations . . . ." ECF No. 59, n12 (emphasis added).

Consistent with the foregoing, the lack of an Iraqi labor permit did not render SOC's employment agreement with Mr. Risinger illegal.  As also recognized by the Court, SOC, as an American contractor, had no affirmative duty to provide or obtain a labor permit for Mr. Risinger.

While Mr. Risinger may have been in the country legally for work under the SOFA, that does not mean he had no obligation to obtain a permit in order to claim entitlement to the Labor Code's protections.  Indeed, the Labor Code extends rights and benefits to workers, but in exchange, it also imposes obligations:

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

8.

> The worker must adhere entirely to the provisions of this law, the regulations and decrees issued pursuant thereto, the provisions of the individual and collective contracts of labor and the internal rules of the work (place).

Hamoudi Decl., App. A, Labor Code art. 122.  The Labor Code permit requirement primarily functions to ensure Iraqi citizens are protected and that, to the greatest extent possible, Iraqis are fully employed.  Hamoudi Decl. ¶ 61.  For a foreign worker to lay claim to the protections of the Labor Code, that worker first must satisfy his/her obligations under the Labor Code, including obtaining a work permit.  Hamoudi Decl., App. A, Labor Code art. 23.  Just as Iraqi-citizen workers are expected to comply with all the articles for the Labor Code in order to benefit from its full range of rights and benefits, so must Mr. Risinger.  Despite his failure to comply with a key provision of the Labor Code, Mr. Risinger still bases his claims for overtime and denial of meal and rest periods on Labor Code provisions: Articles 55-56 (overtime), Article 58 (rest periods), Articles 60-61 (one day of rest per week), and Article 64 (overtime).  Iraqi workers may not cherry-pick the provisions that they wish to comply with while expecting the Labor Code to supply substantive protections and this Court should likewise not permit Mr. Risinger to claim entitlement to the Labor Code's protections because he has failed to comply with its obligations.

C. **The Iraq Labor Code Provisions Regarding Overtime Do Not Apply to Security Guards**

Mr. Risinger's claims regarding overtime under Labor Code Article 56 do not apply because Labor Code Article 66(2) states that the "provisions of Article 56 of this law do not apply to the following workers: those working as security guards."  Labor Code Article 56 provides that "For work that takes place in two periods, and for work that is sporadic, it is not permitted to keep the worker in the place of work for more than twelve hours, and the hours of actual work shall not exceed eight hours a day."

Mr. Risinger relies on an unofficial translation of the Labor Code and argues that Labor Code

9.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

Article 66(2) refers to "workers assigned to watchkeeping." The term "watchkeeping," Plaintiff argues, does not necessarily apply to him because the word "can certainly mean something different than an armed guard," the position that Mr. Risinger held. ECF No. 44, 36:16-17. As Professor Hamoudi explains in his declaration, however, the Arabic term translated as "watchkeeping" does include the position of armed guard:

> The precise two operative words used in Article 66(2)(b) are "*mushtaghilin*" which comes from the root *shaghala* and means, in this context, "to be engaged in" or to "work." The other term is *hirasa,* which comes from the root *harasa,* and it means to "guard." In its noun form, *haris,* it refers to guards of all sorts, from those watching over things to bodyguards. The Royal Guard, responsible for protecting the king during the monarchy, used the same root term in Arabic, as did the Republican Guard during the Ba'ath era. Nobody would have thought to translate either of those as "Royal Watchkeepers" or "Republican Watchkeepers."
>
> Hence, the term certainly is not limited to "watchkeeping" as suggested by the Labor Code Translation. In fact, when Iraqi lawmakers wanted to address the specific matter of guards responsible for protecting particular places and things, they were quite able to do so using more restrictive terminology.

Hamoudi Decl. ¶¶ 41-42.

Regardless of how any English dictionary defines "watchkeeping," the relevant definition is the one applied to the Arabic word used in the Labor Code. As Professor Hamoudi explains, the Arabic word used in Labor Code Article 66(2) is properly translated as "security guards." *Id.*; Hamoudi Decl., App. A, Labor Code art. 66(2). Plaintiff's argument that the court should delve into the archaic roots of an English word contained in a suspect translation rather than the meaning of the original Arabic text is simply wrong.

Furthermore, as Professor Hamoudi notes, the Ministry of Labor and Social Affairs issued Regulation 6 of 1988 to provide additional regulations to govern those employed as guards. Hamoudi Decl. ¶ 45. Regulation 6, Articles 2-3 confirm that those employed as guards are exempt from Labor Code Article 56. *Id.* This same regulation creates an exemption from any Labor Code

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

10.

provisions relating to rest period, allowing "the parties to contract such that there are no rest periods during the day as called for in the Labor Code." *Id.* at ¶ 46. Consequently, this Court should deny any claims based on not only Labor Code Article 56 but also any claim based on Labor Code provisions relating to rest periods (such as Labor Code Article 58).

### D. Mr. Risinger's $65,000 Salary Fully, Completely, and Fairly Compensates for the Services Provided

Mr. Risinger's claims under Labor Code Articles 55-56, 58, 60, 61, and 64 all critically, and wrongly, assume that the Defendants are required to compensate its employees on an hourly basis. The Labor Code plainly permits a worker and employer to reach an alternative agreement. Specifically, the parties can agree to set wages based "on the basis of a lump sum or in accordance with any other regime that sets the value of the wage based on the production of the worker, so long as it does not fall below the minimum wage of an unskilled worker." Hamoudi Decl., App. A, Labor Code art. 45. This provision contemplates that, in Iraq, a lump sum (i.e., a salary) can be paid that compensates an employee for his/her production, similar to salaries in the United States that compensate workers regardless of the hours worked.

Here, Mr. Risinger was entitled under his employment agreement to receive a lump sum of $65,000, plus vacation days and other benefits, for a single year of work as a security guard in Iraq. No minimum or maximum hours were set forth in the parties' contract. The parties agreed, therefore, that the lump sum of $65,000, plus vacation, and other benefits compensated Mr. Risinger fully for his annual production in Iraq.

The Labor Code goes on to provide, critically, that whatever compensation arrangement the parties agree upon will be proper "*so long as it does not fall below the minimum wage of an unskilled worker.*" *Id.* (emphasis added). In other words, the Labor Code requires only that the agreed upon wage be equal to or higher than the minimum wage for an unskilled worker. *Id.* at art. 47.

LITTLER MENDELSON, P.C.
Attorneys At Law
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

11.

The $65,000 lump sum that Mr. Risinger received is far in excess of the Iraqi minimum wage for an unskilled worker.  In 2012, after Mr. Risinger's employment was completed, the Iraqi minimum wage for an unskilled worker was 120,000 Iraqi Dinars per month.[5]  Assuming that one month consists of 24 work days (factoring four weekly days of rest every month and two days of national holidays), that results in 5000 Iraqi Dinars *per day*.  See Hamoudi Decl. ¶ 53.  That results in 625 Iraqi Dinars per hour, which is equivalent to approximately $0.49 per hour.  *Id.*  Assuming 12 hours of work per day, including four hours of overtime, the typical Iraqi worker would be entitled to 48 hours of work at regular pay and 36 hours of overtime pay, totaling 63,750 Iraqi Dinars per week.  Thus, under the Labor Code, the minimum compensation for an unskilled Iraqi worker working 12 hours per day for 365 days would be 3,315,000 Iraqi Dinars, which is approximately $2,598.96 for the year.[6]

Mr. Risinger's $65,000 lump sum compensation, which paid him for all of his production under the parties' employment agreement, does not fall below the minimum wage of an unskilled worker under the Iraq Labor Code.  For this simple reason, Mr. Risinger has no viable cause of action under the Labor Code that will provide him with a remedy and no basis to use the Labor Code to improve his agreed-upon compensation for his security guard work in Iraq.

Mr. Risinger's lump sum compensation far exceeded what *any worker*, Iraqi or foreigner, could legitimately demand under the Labor Code and he cannot cherry pick provisions from the Labor Code and ignore other provisions that, when enforced, operate to deny his claims.  Given the lack of any viable remedy under the Iraq Labor Code, the Court should dismiss Mr. Risinger's Iraqi

---

[5] The Council of Ministries Decree No. 409 of 2009 sets the monthly minimum wage for unskilled workers in the private sector at 120,000 Iraqi Dinars.  Hamoudi Decl. ¶ 53.

[6] This calculation of Iraqi wages does not factor in the 42 days of paid vacation time and the other benefits that SOC provided to Mr. Risinger.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

Labor Code claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## III. CONCLUSION

For the foregoing reasons, the application of the Iraq Labor Code to Mr. Risinger's claims must result in the dismissal of Mr. Risinger's class action suit. Furthermore, even if the Iraq Labor Code is applicable to his individual claims, the plain language of the Labor Code operates to limit or entirely deny Mr. Risinger's individual remedies. Thus, Mr. Risinger's claims based on the Iraq Labor Code should be dismissed.

Dated: April 29, 2013.

Respectfully submitted,

*/s/ Cory G. Walker*
RICK D. ROSKELLEY, ESQ.
CORY G. WALKER, ESQ.
LITTLER MENDELSON, P.C.

Attorneys for Defendants

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

13.

# PROOF OF SERVICE

I am a resident of the State of Arizona, over the age of eighteen years, and not a party to the within action. My business address is 2425 E. Camelback Rd., Suite 900, Phoenix, AZ 85016. On April 29, 2013, I served the within document(s):

**DEFENDANTS' SUPPLEMENTAL BRIEFING PURSUANT TO COURT'S ORDER OF MARCH 29, 2013 (DKT. #59)**

☒ By CM/ECF Filing – Pursuant to FRCP 5(b)(3) and LR 5-4, the above-referenced document was electronically filed and served upon the parties listed below through the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Scott E. Gizer, Nev. State Bar No. 12216
sgizer@earlysullivan.com
EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP
3960 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

Devin A. McRae, CA State Bar No. 223239
dmcrae@earlysullivan.com
EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048

Erik C. Alberts, CA State Bar No. 221795
Erik.alberts@ealawflrm.net
LAW OFFICES OF ERIK C. ALBERTS
5900 Wilshire Boulevard, 26th Floor
Los Angeles, California 90036

I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service. Under that practice it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 29, 2013, at Phoenix, AZ.

*/s/ Bridget Cano*
Bridget Cano

Firmwide:119971905.1 057573.1120

14.