UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

KARL E. RISINGER,

Plaintiff,

v.

SOC LLC, *et al.*,

Defendants.

Case No. 2:12-cv-00063-MMD-PAL

ORDER

**I.  SUMMARY**

This is a class action involving a dispute over the terms of employment for armed guards hired to work in Iraq. Before the Court is Plaintiff Karl. E. Risinger's Motion for Clarification Regarding Class Definition ("Motion for Clarification") (ECF No. 246). The Court has reviewed Defendants SOC LLC, SOC-SMG, Inc., and Day & Zimmermann, Inc.'s (collectively, "Defendants") response (ECF No. 254), and Plaintiff's reply (ECF No. 256).

Additionally before the Court are two of Defendants' motions: (1) Motion to Strike Expert Testimony of William Buckley Regarding Asserted Damages for Persons Outside the Class ("First Motion to Strike") (ECF No. 243); and (2) Motion to Strike Expert Testimony of William Buckley under *Daubert* and Fed. R. Evid. 702 ("Second Motion to Strike") (ECF No. 268). The Court has reviewed Plaintiff's responses (ECF Nos. 252, 279), and Defendants' replies (ECF Nos. 256, 280) relating to these two motions.

///

///

For the following reasons, the Court grants Plaintiff's Motion for Clarification, denies Defendants' First Motion to Strike as moot, and grants in part and denies in part Defendants' Second Motion to Strike.

**II.   BACKGROUND**

The Court incorporates herein the facts as described in previous orders. (ECF Nos. 155, 263.)

**III.   PLAINTIFF'S MOTION FOR CLARIFICATION (ECF NO. 246)**

The Court certified a class consisting "of armed guards who worked for SOC in Iraq between 2006 and 2012." (ECF No. 254 at 7 (citing ECF No. 155 at 19, 27).) In his Motion for Clarification, Plaintiff seeks an order clarifying that "armed guards" encompasses individuals Plaintiff refers to as "Reclassified Guards." (ECF No. 246 at 3.) Reclassified Guards held job titles other than "Guard" during their employment with Defendants because Defendants changed their job title and/or salaries upon, or shortly after, their arrival in Iraq. (*Id.* at 2.) Nevertheless, Plaintiff argues, these individuals are "armed guards" within the meaning of the Class definition because they "were recruited as armed guards, received the same representations as the other Class members, were hired as armed guards, signed the standardized armed contracts, performed armed guard duties and had the same 72-hour work restriction under the TWISS-II contract." (*Id.*)

Defendants argue (1) that Plaintiff's request is untimely as he already agreed to a class list that excluded the Reclassified Guards; (2) that granting Plaintiff's request would violate the Reclassified Guards' due process rights; (3) that the Rule 23 certification requirements are not satisfied for a class that includes the Reclassified Guards; and (4) that Plaintiff's alternative request for a subclass of Reclassified Guards is precluded because Plaintiff is not a Reclassified Guard himself. (ECF No. 254 at 13-21.)

Plaintiff disputes Defendants' first point—that Plaintiff already agreed to a class list that excluded the Reclassified Guards—on the ground that Plaintiff's agreement was based on misleading representations by Defendants. (ECF No. 259 at 7.) According to Plaintiff, Defendants represented that the class list included all individuals who were hired

or employed as guards and that the Reclassified Guards entered into non-Guard employment contracts. (*Id.*) Plaintiff agrees that individuals are not part of the class if they entered into non-Guard employment contracts or entered employment contracts offering annual salaries greater than $65,000. (*Id.* at 8.) However, Plaintiff contends that the Reclassified Guards entered the same employment agreement as other members of the Class and never signed new contracts when Defendants changed their titles and/or salaries. (*Id.*)

Setting aside whether Defendants misrepresented material information regarding the class list, the Court certified a class consisting "of armed guards who worked for SOC in Iraq between 2006 and 2012." (ECF No. 254 at 7 (citing ECF No. 155 at 19, 27).) In the context of that order, the word "guards" carries its ordinary, everyday meaning. It does not refer specifically to individuals whose titles in Defendants' personnel files happened to be "Guard." (*See id.* at 14.) Moreover, the Court certified the class to efficiently resolve common questions of fact and law: "whether SOC promised recruits a 72-hour workweek in order to induce them to accept a job offer, whether SOC knew that guards would in fact be required to consistently work longer hours due to a preventable understaffing practice, and whether class members are entitled to damages for regularly working beyond 72 hours." (ECF No. 155 at 22.) The claims of the Reclassified Guards turn on the answers to these very same questions. Accordingly, the Court clarifies that Reclassified Guards are members of the class.

Defendants have not persuaded the Court that Plaintiff's request is untimely. Defendants' characterization of Plaintiff's request as untimely is pegged to Plaintiff's agreement "months ago" to the class list. (*See* ECF No. 254 at 13.) However, Plaintiff's agreement was apparently based on a misunderstanding between counsel. Consequently, Plaintiff's agreement cannot serve as the point at which some time limit for seeking clarification began to run.

Defendants further argue that granting Plaintiff's motion will violate the Reclassified Guards' due process rights. (ECF No. 254 at 17.) Defendants contend that granting

3

1  Plaintiff's motion will require the Court to "decertify the existing class, recertify a new one, and approve a notice plan and opt-out period to protect the new members' due process rights." (*Id.*) Plaintiff counters that the existing class action notice may be distributed to the Reclassified Guards with a new opt-out period. (ECF No. 259 at 6.) Plaintiff represents that providing this additional notice will not delay this matter any further because a trial date has not yet been set. (*Id.*) The Court agrees with Plaintiff that the Reclassified Guards' due process rights will be adequately protected by distributing the existing class action notice to the Reclassified Guards with a revised opt-out period.

Defendants make further arguments based on their perception of Plaintiff's filing as a motion to amend the class. (*See* ECF No. 254 at 13 (arguing that there are no new factual or legal developments to ground amendment and that Plaintiff has had ample time and opportunity to discover facts that would ground amendment); *id.* at 17-19 (arguing that Plaintiff has not satisfied Rule 23 with respect to the Reclassified Guards).) The Court will not consider these arguments because the Court agrees with Plaintiff that the motion is one for clarification rather than amendment. In addition, Defendants' argument regarding Plaintiff's request for a subclass (*id.* at 19-21) is moot in light of the foregoing analysis.

Accordingly, the Court will grant Plaintiff's Motion for Clarification.

**IV.    DEFENDANTS' FIRST MOTION TO STRIKE (ECF NO. 243)**

Plaintiff seeks to introduce the expert testimony of William Buckley at trial regarding the class's damages. In their First Motion to Strike, Defendants seek to strike the portions of Mr. Buckley's report that opine on liability and damages regarding the Reclassified Guards. (ECF No. 243 at 5.) The Court will deny Defendants' motion as moot in light of the Court's ruling that the class includes the Reclassified Guards.

**V.    DEFENDANTS' SECOND MOTION TO STRIKE (ECF NO. 268)**

Mr. Buckley's testimony is based on the results of a survey that he and class counsel sent to 935 individuals on a class list provided by Defendants (that does not include the Reclassified Guards). (ECF No. 268 at 9; ECF No. 279 at 24.) The survey asked for "(1) name of respondent, (2) dates of employment, (3) time spent at each base

4

while in Iraq, (4) acknowledgement of whether respondent was ever required to work 7-days per week, (5) an estimate of what percent of the time with SOC that respondent worked 7-days per week, (6) acknowledgment of whether respondent ever worked greater than 12-hours per day, (7) an estimate of percent of shifts respondent worked more than 12-hours in a day, and (8) for the days greater than 12-hours an estimate of the amount of time actually worked, i.e. length of the workday." (ECF No. 268-7 at 7-8.) Mr. Buckley and class counsel received about 159 responses. (ECF No. 268 at 9; ECF No. 268-7 at 8.) In their Second Motion to Strike, Defendants seek to strike the entirety of William Buckley's expert report for failure to comply with the requirements of Fed. R. Evid. 702. (ECF No. 268 at 11.)

### A. LEGAL STANDARD

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Supreme Court provided additional guidance on Rule 702 and its application in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert*, the Court held that scientific testimony must be reliable and relevant to be admissible. *Daubert*, 509 U.S. at 589. *Kumho Tire* clarified that *Daubert's* principles also apply to technical and specialized knowledge. *See Kumho*, 526 U.S. at 141. The trial court has "considerable leeway" in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. *Id.* at 152. The "test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141.

The Ninth Circuit has emphasized that "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional

barriers to opinion testimony." *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) (citations and internal quotation marks omitted). "An expert witness—unlike other witnesses—is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion has a reliable basis in the knowledge and experience of his discipline." *Id.* (citations and internal quotation marks omitted). Shaky but admissible evidence should not be excluded but instead attacked by cross-examination, contrary evidence, and attention to the burden of proof. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir.), *as amended* (Apr. 27, 2010).

### B. DISCUSSION

Defendants argue that Mr. Buckley's report should be stricken because it is not the product of a qualified expert in survey design and statistical analysis; it relies on insufficient data because the surveys introduce egregious bias and ambiguity; and it does not comport with statistical principles. (ECF No. 268 at 11.)

#### 1. Qualifications

Defendants argue that Mr. Buckley is not qualified to provide expert testimony on "survey design and sampling" because Mr. Buckley does not have any educational or professional background in survey design or sampling. (*Id.*) In support of their argument, Defendants cite to a recent case in which Mr. Buckley was not qualified as an expert, *Wolf v. Hewlett Packard Co.*, No. 5:15-cv-01221-BRO-GJS (C.D. Cal. September 1, 2016). (*Id.*) In his deposition in that case, Mr. Buckley responded in the negative when asked whether he had an educational or professional background in survey design or sampling. (*Id.*) Defendants contend that Mr. Buckley never designed a survey as an expert until this matter, has not taken any classes on survey design or sampling, and does not understand basic concepts of survey research or statistical extrapolation. (*Id.* at 12-15.)

Plaintiff argues that Mr. Buckley has been offered as a "damages expert"—not an expert in "survey design and sampling"—and that Mr. Buckley is qualified as such. (ECF No. 279 at 11.) Plaintiff further argues that the questionnaire Mr. Buckley used "was not a

scientific survey requiring specialized expertise in survey design or sampling, as the Questionnaire was sent to all Class members seeking information regarding their own personal work experience, as opposed to a consumer research study." (*Id.*) In support of Mr. Buckley's quantitative expertise and experience, Plaintiff cites to Mr. Buckley's more than thirty years' experience providing financial analysis and quantitative support in litigation; his MBA in finance; his graduate-level coursework, including marketing classes in survey design and utilizing survey data; his experience as an adjunct professor teaching financial analysis to professionals; and his on-the-job training and experience with questionnaires, surveys, sample statistics, wage-and-hour class work, and calculating damages. (*Id.*)

In response to Defendants' citation to *Wolf*, Plaintiff asserts that Mr. Buckley's deposition testimony was taken out of context—Mr. Buckley merely testified that he is not an expert in survey design or sampling following a line of questioning regarding consumer psychology and behavior and conjoint analysis, a survey-based statistical technique not at issue in this case. (*Id.* at 12.) While the court in *Wolf* found that Mr. Buckley lacked "educational or professional background in survey design or sampling," the court's ultimate finding was that Mr. Buckley "was not qualified to testify as an expert on consumer behavior prediction and conjoint analysis." (ECF No. 268-6 at 11.) Given that these two areas of expertise are not at issue in this case, the court's finding regarding Mr. Buckley's background in survey design and sampling—extraneous to its ultimate finding—is only marginally persuasive. Moreover, the court in that case found that Mr. Buckley has a "fairly strong statistical background" outside of consumer behavior. (*Id.*)

The Court agrees with Plaintiff that Mr. Buckley's experience shows he has strong quantitative skills. (*See* ECF No. 279 at 11.) While Defendants contend that Mr. Buckley is unable to explain core statistical concepts such as what makes a sample representative or biased, these are issues to explore on cross-examination. These purported insufficiencies bear on the weight of Mr. Buckley's testimony rather than its admissibility.

///

## 2. Survey Design

Defendants further argue that Mr. Buckley's testimony is inadmissible because it is based on a flawed survey. (ECF No. 268 at 15.) Plaintiff argues that the survey was conducted according to generally accepted principles. (ECF No. 279 at 14.)

Surveys are admissible if they are relevant, conducted according to accepted principles, and set upon a proper foundation for admissibility. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001). As long as surveys "'are conducted according to accepted principles,' survey evidence should ordinarily be found sufficiently reliable under [*Daubert*, 509 U.S. 579]." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997) (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992)). The proponent bears the burden of showing "that the survey was conducted in accordance with generally accepted survey principles and that the results were used in a statistically correct manner." *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988). In the absence of evidence that the surveys were conducted in accordance with generally accepted principles, surveys have been inadmissible when their creators were not qualified to design or interpret surveys, *Elliott v. Google, Inc.*, 860 F.3d 1151, 1160 (9th Cir. 2017); *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005); *see also United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1496 (9th Cir. 1997) (noting that an "unscientific" survey "prepared by a non-witness of unknown qualifications" violated Fed. R. Evid. 703 and would not meet the *Daubert* standards for scientific evidence), and when the experts introducing the surveys did not actually conduct them, *F.T.C. v. Commerce Planet, Inc.*, 642 F. App'x 680, 682 (9th Cir. 2016).

"Once the survey is admitted, however, follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility." *Clicks Billiards, Inc.*, 251 F.3d at 1263. "Unlike novel scientific theories, a jury should be able to determine whether asserted technical deficiencies undermine a survey's probative value." *Southland Sod Farms*, 108 F.3d at 1143 n.8. "Technical

inadequacies in the survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Keith*, 858 F.2d at 480. Thus, even surveys with technical problems such as improper participant pools, biased questions, *Southland Sod Farms*, 108 F.3d at 1143, or flawed coding of responses, *E. & J. Gallo Winery*, 967 F.2d at 1292, are admissible.

Defendants first argue that the survey is inadmissible because it was administered by class counsel, not by Mr. Buckley himself. (ECF No. 268 at 16.) Plaintiff counters that Mr. Buckley designed all the questions and that counsel simply transcribed them. (ECF No. 279 at 19.) Plaintiff additionally argues that class counsel's involvement was merely ministerial (e.g., mailing and collecting the surveys) and does not render the survey responses unreliable. (*Id.*) The Court agrees with Plaintiff that counsel's involvement in mailing and collecting the surveys does not render the data unreliable. Nor does counsel's mere transcription of Mr. Buckley's survey questions. Mr. Buckley testified that he—not class counsel—drafted the questions and that class counsel reviewed the questions and put them on a form. (ECF No. 268-2 at 102.) To the extent that class counsel's involvement might have introduced bias, Defendants may choose to attack the survey's probative value on that basis at trial. *See Southland Sod Farms*, 108 F.3d at 1143.

Defendants cite several cases in support of their first argument that are unpersuasive or distinguishable. Defendants' citation to *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057, 1068 (C.D. Cal. 2002), is unpersuasive because the court based its opinion on a Third Circuit case, *Pittsburgh Press Club v. United States*, 579 F.2d 751, 758 (3d Cir.1978), that predated the Ninth Circuit's decision in *Southland Sod Farms*, 108 F.3d 1134. In *Southland Sod Farms*, the Ninth Circuit expressly contemplated "leading questions" and determined that such bias bears on "the weight, and not the admissibility, of the survey." 108 F.3d at 1143 (citing *E. & J. Gallo Winery*, 967 F.2d at 1292). Two other cases Defendants cite, *Sirko v. Int'l Bus. Machines Corp.*, No. CV 13-03192 DMG SSX, 2014 WL 4452699 (C.D. Cal. Sept. 3, 2014), and *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 485 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011), are distinguishable

because counsel in those cases designed the surveys at issue entirely themselves and without the assistance of an expert. *Sirko*, 2014 WL 4452699, at *4; *Marlo*, 251 F.R.D. at 485. Defendants have produced no evidence to rebut Plaintiff's contention that Mr. Buckley designed the survey. Rather, Defendants' citations to Mr. Buckley's deposition transcript demonstrate that Mr. Buckley orally prescribed the questions to be included in the survey, and class counsel wrote them down. (*See* ECF No. 268 at 16-17; ECF No. 268-2 at 101-07.) A fourth case Defendants cite, *Geo. M. Martin Co. v. All. Mach. Sys. Int'l, LLC*, No. C 07-00692 WHA, 2008 WL 2008638 (N.D. Cal. May 6, 2008), is distinguishable because the survey in that case was "spoon-fed to expert by counsel and client." 2008 WL 2008638, at *1. Class counsel's transcription of Mr. Buckley's survey questions does not constitute "spoon-feeding" given that Mr. Buckley formulated the questions.

Defendants further argue that the survey is inadmissible because class members received the survey with a cover letter that purportedly emphasized the recipients' financial interest in the survey. (ECF No. 268 at 17-18.) Plaintiff argues that the cover letter merely informed the respondents of the survey's purpose. (ECF No. 279 at 19-20.) Plaintiff further argues that questions about bias bear on the weight rather than the admissibility of the survey. (*Id.* at 20.) The Court agrees with Plaintiff that the cover letter did not introduce undue bias, particularly when the class members were already aware of their financial stake in the litigation. Even without the cover letter, respondents would have been aware of an incentive to inflate the hours they worked. In addition, even if the cover letter introduced bias, the Court agrees with Plaintiff that the issue would bear on the weight rather than the admissibility of the survey. *See Southland Sod Farms*, 108 F.3d at 1143. Defendants' citation to *Gibson*, 181 F. Supp. 2d 1057, is unpersuasive for the reason discussed *supra*, as is Defendants' citation to *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 589 (N.D. Cal. 2016), which bases its reasoning on *Gibson* and the Third Circuit case discussed *supra*, *Pittsburgh Press Club*, 579 F.2d 751.

///

Defendants further argue that the survey is inadmissible because the survey questions were not pretested and created confusion. (ECF No. 268 at 18.) Plaintiff responds that Mr. Buckley did pretest the questions and designed them to avoid confusion. (ECF No. 279 at 21.) Plaintiff argues that Buckely pretested the questions by (1) reviewing Risinger's deposition testimony and the affidavits of certain Class members to craft questions with similar language that would be used and understood by the Class members; (2) reviewing the Class notice for clarity on language regarding the six-twelve attribute; and (3) considering hypothetical answers from the respondents to the questions for quantitative purposes. (*Id.* at 20-21.) Plaintiff further argues that the questions were not confusing because there were very few unclear responses. (*Id.* at 21.) Finally, Plaintiff argues that Defendants' criticisms of the questions and any resulting inaccurate data bear on the weight rather than the admissibility of the evidence. (*Id.*) The Court does not find Defendants' argument persuasive. Defendants' evidence that the survey was confusing is trivial—two respondents (of 159) provided data outside the relevant time period, "several" respondents included data on their work experiences outside of Iraq, and one respondent provided data about his work in jobs other than "Guard." (ECF No. 268 at 19.) The relatively small number of improper responses actually suggests that the survey worked fairly well. Moreover, "[t]echnical inadequacies in the survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Keith*, 858 F.2d at 480.

Defendants further argue that the survey is inadmissible because Mr. Buckley admitted that he was "not able to use the best practice approach to the administration." (ECF No. 268 at 20.) Plaintiff argues that Defendants take Mr. Buckley's deposition testimony out of context. (ECF No. 279 at 22.) The Court agrees with Plaintiff. Mr. Buckley testified that he believed the "overall accepted survey research methodology" and the "elements of best practices in survey methodology" were incorporated into the survey. (ECF No. 268-2 at 154, 156.) Mr. Buckley only noted that he was not able to use the best approach to the administration of the survey "all the way through," meaning that he was

unable to include data from those individuals who did not respond. (*See* ECF No. 279 at 22.)

In sum, Defendants have not persuaded the Court that the survey data is inadmissible for any of their cited reasons.

### 3. Compliance with Statistical Principles

Defendants further argue that Mr. Buckley's opinion is inadmissible because it is based on a non-representative sample of the class. (ECF No. 268 at 21.) Defendants contend that Mr. Buckley intends to opine on damages for all class members (roughly 1,000) based on responses to the survey even though he only received 159 responses. (*Id.*) Plaintiff argues that the responses are sufficiently numerous to make generalizations about the entire class, even though more than eighty percent of the class's damages are unknown. (*See* ECF No. 279 at 24-25.)

The Court finds that Defendants' argument is persuasive in part. It would be inappropriate for Mr. Buckley to testify about class-wide damages based on the responses of seventeen percent of the class members because (1) the respondents were not chosen by probability sampling and (2) the responses that were received are likely infected with self-selection bias. (*See* ECF No. 268 at 21-22.) However, Defendants have not presented any argument that would prevent Mr. Buckley from testifying in a more limited capacity about the responses he did receive. Accordingly, the Court will limit Mr. Buckley's testimony to that involving the damages incurred by the 159 individuals who responded and not impute their responses to the entire Class, though this limitation is without prejudice to reargument at trial.

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the parties' motions.

///

It is therefore ordered that Plaintiff's motion for clarification (ECF No. 246) is granted consistent with this order. The parties are instructed to include the Reclassified Guards on the class list and give the Reclassified Guards notice of this action.

It is further ordered that Plaintiff's motion to seal (ECF No. 247) is granted.

It is further ordered that Defendant's first motion to strike (ECF No. 243) is denied as moot.

It is further ordered that Defendant's second motion to strike (ECF No. 268) is granted in part and denied in part, without prejudice to reargument at trial. Mr. Buckley may testify about responses to the survey but will not be permitted to impute those responses to the entire class.

DATED THIS 5th day of September 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE